IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRIAN MOOLENAAR,

> Plaintiff,

> v.                                    Civil Action No.
>                                        9:03-CV-1464 (LEK/DEP)

GLENN CHAMPAGNE, *et al.*,

> Defendants.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF:

BRIAN MOOLENAAR, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                     NANCY G. GROENWEGEN, ESQ.
Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Brian Moolenaar, a New York State prison inmate who has

been diagnosed as suffering from degenerative disc disease, has

commenced this action pursuant to 42 U.S.C. § 1983 against a physician

and nurse administrator employed at the prison facility in which he was housed at the relevant times, alleging deprivation of his civil rights.  In his complaint, Moolenaar asserts that the defendants were deliberately indifferent to his serious medical needs by virtue of their failure to assign him to a lower bunk, provide him with a double mattress and bed board, and afford him the treatment which he desired.  Plaintiff also maintains that after filing an internal grievance and commencing a federal civil rights action addressing the care received at the facility, defendants unlawfully retaliated against him.  Plaintiff's complaint seeks recovery of compensatory damages in the amount of ten million dollars.

Currently pending before the court is a motion by defendants seeking the entry of summary judgment dismissing plaintiff's claims.  In their motion, defendants assert that plaintiff has failed to establish their deliberate indifference to his serious medical needs, as distinct from his disagreement with their prescribed course of treatment, and additionally argue that the record lacks any evidence of retaliatory conduct on the part of the named defendants.[1]

---

[1]     Defendants also seek dismissal of plaintiff's claims on the basis of qualified, good faith immunity. In light of my recommendation on the merits, I have not independently addressed the issue of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001); *Harhay v. Town of Ellington Bd. of Ed.,*

Having carefully reviewed the record in light of defendants'
arguments I conclude that no reasonable factfinder could find that either
of the defendants was deliberately indifferent to plaintiff's serious medical
needs, and additionally that there is no evidence of any legally cognizable
adverse action taken by either of the named defendants in retaliation for
plaintiff having engaged in protected activity.  Accordingly, I recommend
that defendants' motion be granted, and plaintiff's complaint be dismissed
in its entirety.

I.    BACKGROUND

Plaintiff is a New York State inmate entrusted to the custody of the
New York State Department of Correctional Services ("DOCS").  At  the
times relevant to his claims, plaintiff was incarcerated within the Franklin
Correctional Facility ("Franklin"), located in Malone, New York.

Shortly before his transfer into Franklin, plaintiff was treated at the
Clinton Correctional Facility ("Clinton") for complaints of lower back pain.
Champagne Decl. (Dkt. No. 30) ¶ 8 & Exh. B (plaintiff's ambulatory health
record, hereinafter cited as "AHR") at 44-45.  X-rays taken of plaintiff's
lumbar spine area on October 30, 2002 revealed a mild to moderate disc

---

323 F.3d 206, 211 (2d Cir. 2003); *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999)
(citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)).

space narrowing at L4-L5 and L5-S1, resulting in a diagnosis of

degenerative disc disease rendered on November 18, 2002.  Champagne

Decl. (Dkt. No. 30) ¶ 8; AHR at 42-44, 99.  At Clinton, plaintiff's back pain

was treated through the use of prescription pain relievers, including

Flexeril, Ibuprofen and Motrin, and prescribed back exercises.[2]  AHR at

44.

Plaintiff was transferred into Franklin on November 25, 2002.

Champagne Decl. (Dkt. No. 30) ¶ 5; AHR at 42.  Upon his arrival at the

facility, Moolenaar advised medical personnel that he required saline

solution for his contact lenses, new contact lenses, and new orthopedic

boots.  AHR at 40-41.  There is no mention in the initial AHR entry for

November 25, 2002 of plaintiff's back problems.  Following initial

screening of plaintiff's medical history by a facility nurse on November 25,

2002, his records were reviewed, as a matter of routine applicable to all

incoming inmates, by Dr. Glenn Champagne, a DOCS physician

_____

[2]      In his complaint plaintiff contends that while still at Clinton he was awaiting magnetic resonance imaging ("MRI") testing of his back.  *See* Complaint (Dkt. No. 1) at 3.  While the record does reflect that plaintiff requested such testing, *see*, *e.g.*, AHR at 42, there is no indication in plaintiff's health records that an MRI was ever ordered by prison medical personnel.  According to defendant Champagne, nothing in plaintiff's medical record indicates the need for an MRI given that with the results of plaintiff's back x-rays, medical personnel were able to diagnose his condition. Champagne Decl. (Dkt. No. 30) ¶ 9.

employed at Franklin.  Champagne Decl. (Dkt. No. 30) ¶ 5.  Dr.

Champagne describes the purpose of that review to include ascertaining

whether any prescriptions should be written and the level of urgency of

any required physical follow-up care.  *Id.*

Plaintiff registered for sick call on November 27, 2002, renewing his

requests for contact lens solution and new boots and, for the first time

since his arrival at Franklin, additionally complaining of ongoing back pain.

Champagne Decl. (Dkt. No. 30) ¶ 7; AHR at 40.  The record of that visit

does not indicate that plaintiff either expressed any physical limitations as

a result of his back pain, or requested any special accommodation.  *Id.*

While at Franklin, plaintiff's back pain was treated in various ways

including through continued use of Flexeril, a muscle relaxant, and

Ibuprofen, an anti-inflammatory medication, as well as through physical

therapy.[3]  Champagne Decl. (Dkt. No. 30) ¶¶ 13, 21-22.

During the initial period following his transfer into Franklin, security

staff at the facility assigned Moolenaar to a dormitory where he was able

---

[3]     According to his medical records, plaintiff requested and received Flexeril refills on February 18, 2003, March 31, 2003 and June 23, 2003, each time having been provided with a thirty day supply of the prescription drug.  Champagne Decl. (Dkt. No. 30) ¶ 21; AHR at 32, 35, 37.

to utilize a lower bunk.  Groenwegen Decl. (Dkt. No. 30) Exh. B

(Transcript of Moolenaar Deposition, hereinafter cited as "Moolenaar

Dep.") at 30.  Plaintiff's circumstances changed, however, on December 9,

2002, when he was transferred into a new dormitory where he was

required to sleep on an upper bunk.  *Id.* at 30-32.  After voicing his

objection to the upper bunk assignment plaintiff was advised that he would

need to obtain a lower bunk permit from the prison medical staff in order

to qualify for such an accommodation.  *Id.* at 32.  Plaintiff's medical

records fail to disclose any such request for such a lower bunk permit,

however, and during his deposition plaintiff acknowledged that he did not

submit one despite having been advised of the procedure for obtaining

such a permit.  Champagne Decl. (Dkt. No. 30) ¶ 15; Moolenaar Dep. at

31-37; *see also* Moolenaar Dep. at 46.

On December 18, 2002, while climbing into his upper bunk, plaintiff

experienced back pain, resulting in his falling to the floor.  Complaint (Dkt.

No. 1) at 2; AHR at 39.  During the course of that fall, plaintiff struck his

head on a locker, and was knocked unconscious.  *Id.*  As a result of his

injuries plaintiff was taken to the infirmary at Franklin, and later sent to

Alice Hyde Medical Center for evaluation.  Champagne Decl. (Dkt. No. 30)

¶ 17; AHR at 39.  Plaintiff was treated at the Medical Center for pain and released back to the Franklin infirmary, where his condition was monitored for a period of twenty-four hours in light of the pain medication prescribed. Champagne Decl. (Dkt. No. 30) ¶ 17; AHR at 124.  Plaintiff was discharged from the infirmary by Dr. Champagne on the next day, following a normal examination during which plaintiff stated that he felt better.  Champagne Decl. (Dkt. No. 30) ¶ 18; AHR at 124-25.  At that point plaintiff was prescribed a bottom bunk in order to avoid any further falls during his anticipated recovery period, as well as bed boards for use as passive treatment for back pain.  *Id.*  Plaintiff was also continued on Flexeril and Ibuprofen.  *Id.*

Plaintiff was seen and evaluated by Dr. Ibarreta, a physician at Franklin, on April 16, 2003.  Champagne Decl. (Dkt. No. 30) ¶ 22; AHR at 34.  At that time Dr. Ibarreta ordered the plaintiff undergo physical therapy twice weekly for a period of four weeks.  *Id.*  Plaintiff attended all eight prescribed sessions, and was discharged from physical therapy following the final session, with no notation of any recommended follow-up.[4]

---

[4]      In both his complaint and motion opposition papers, plaintiff maintains that he actually attended twelve sessions of physical therapy, with the last three having been administered by a new, substitute provider following the resignation of his initial therapist.  *See* Plaintiff's Aff. (Dkt. No. 31) ¶ 27.  Plaintiff acknowledges that there is no

Champagne Decl. (Dkt. No. 30) ¶ 23; AHR at 63.

Plaintiff presented for medical assistance at a routine follow-up sick call on November 25, 2003, seeking treatment for a skin condition. Champagne Decl. (Dkt. No. 30) ¶ 25; AHR at 24.  On that occasion Dr. Champagne, who had not previously treated Moolenaar for the condition, was the duty physician.  *Id.*  During that visit Dr. Champagne indicated his awareness that plaintiff had filed a federal court action against him alleging the denial of proper medical care, and advised Moolenaar that in light of his apparent dissatisfaction with his professional services he did not believe it would be appropriate for him to continue rendering non-emergency care to the plaintiff.  *Id.*  At that time there were three other physicians available on staff at Franklin to meet plaintiff's non-emergency medical needs.  Champagne Decl. (Dkt. No. 30) ¶ 26.  At no time during his stay at Franklin, which ended on or about August 4, 2004, was plaintiff denied emergency care by Dr. Champagne, or any non-emergency care by other physicians at Franklin.  Champagne Decl. (Dkt. No. 30) ¶ 27; Moolenaar Dep. at 95-96.

---

written evidence to substantiate his claim, and speculates that the records of those last three sessions may have been destroyed to cover up the fact that the substitute therapist recommended additional therapy sessions which were not ordered by medical personnel at Franklin.  *Id.* ¶ 28.

In January of 2003, plaintiff filed a grievance complaining of the denial of physical therapy for his back condition.  Complaint (Dkt. No. 1) at 6.  That grievance was denied at the local level as lacking in merit based upon a finding that the decision of whether to order such therapy was for facility physicians, who up until then had not ordered such treatment.  *Id.*; *see also* Complaint (Dkt. No. 1) Exhs. E, F.  That determination was upheld on appeal to the Central Office Review Committee ("CORC") by decision dated January 23, 2003.  *Id.* Exh. G.

On January 27, 2003, plaintiff was issued a misbehavior report by Corrections Officer Boyer, alleging plaintiff's use, without permission, of two mattresses.  Complaint (Dkt. No. 1) at 7.  That misbehavior report led to a disciplinary hearing at which plaintiff was found guilty of lying (Rule 107.20), possessing excess state property (Rule 113.20), and being out of place (Rule 109.10), resulting in a penalty which included a fifteen day loss of privileges and a surcharge of five dollars.  Complaint (Dkt. No. 1) at 7-8 & Exhs. H-K.

II.   PROCEDURAL HISTORY

This action was commenced by the plaintiff in the Southern District

of New York, and was transferred to this district on December 10, 2003.[5]

Dkt. No. 1.  As defendants, plaintiff's complaint names Dr. Glenn

Champagne and Nurse Administrator N. Smith, both employed by the

DOCS and stationed at Franklin. *Id.*  Plaintiff's complaint asserts a claim

of deliberate indifference to his serious medical needs and, when

generously read, could be construed as also alleging a claim of unlawful

retaliation, based principally upon Dr. Champagne's refusal to provide him

with non-emergency treatment.

Following the joinder of issue by their filing of an answer on May 27,

2004, Dkt. No. 14, and pretrial discovery, which included the taking of

plaintiff's deposition, defendants moved on October 31, 2005 seeking the

entry of summary judgment dismissing plaintiff's claims.  Dkt. No. 30.  In

their motion, *inter alia*, defendants assert that as a matter of law plaintiff

cannot establish their deliberate indifference to his serious medical needs,

nor can he establish that they retaliated against him for engaging in

protected activity.  Defendants also seek dismissal on the basis of

---

[5]     A prior action, commenced by the plaintiff in this court addressing the
circumstances now presented, *Moolenaar v. Glenn Champagne, et al.*, Civil Action No.
03-CV-374 (FJS/DEP) (N.Y.N.D., filed 2003) was dismissed, without prejudice, on
motion by the named defendants pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure.

qualified immunity.  Plaintiff has since responded in opposition to

defendants' motion, Dkt. No. 31, which is now ripe for determination and

has been referred to me for the issuance of a report and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

      A.    Summary Judgment Standard

      Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for

purposes of this inquiry, if "it might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

11

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs

are entitled to special latitude when defending against summary judgment

motions, they must establish more than merely "metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith

Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

to consider whether *pro se* plaintiff understood nature of summary

judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

     B.    Plaintiff's Deliberate Indifference Claim

     In his complaint, plaintiff asserts that the two named defendants were deliberately indifferent to his serious medical need based upon their failure to properly diagnose and treat his back condition.  Plaintiff's allegations against Nurse Administrator Smith center upon his contention that in light of her position she was duty bound, upon his arrival, to review his medical history and insure that while at Franklin he received proper treatment including, in this instance, permission to occupy a lower bunk.

Plaintiff's claims against Dr. Champagne stem from his alleged failure to properly diagnose and treat his back condition, resulting in the December 18, 2002 incident and his experiencing ongoing pain.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted

14

subjectively with "deliberate indifference".  *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'" – since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical

16

malpractice has occurred, does not alone provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Diagnostic techniques and treatments are "classic example[s] of matters for medical judgment"; accordingly prison medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

In their motion, defendants do not challenge plaintiff's assertion that he suffers from a serious medical need of constitutional proportions.[6] Defendants do, however, steadfastly deny their deliberate indifference to plaintiff's back condition.

For Nurse Administrator Smith's part, she notes that there is no evidence in the record of her involvement in plaintiff's circumstances.

_____

[6]     In light of plaintiff's allegations regarding ongoing pain associated with his back condition, one could argue that it would be inappropriate for the court to find, as a matter of law, that no reasonable factfinder could conclude his degenerative disc disease condition rises to a level of constitutional significance.  *See*, *e.g.*, *Scott v. Perio*, No. 02-CV-578, 2005 WL 711884, at *2-*5 (W.D.N.Y. Mar. 25, 2005).

According to defendant Smith, the customary practice at Franklin is that an incoming inmate's medical records are reviewed by one of the facility's nurses to assess the inmate's condition and current medical needs. Smith Decl. (Dkt. No. 30) ¶ 4.  In accordance with that custom, plaintiff's medical records were reviewed on November 25, 2002, the day of his arrival, by Franklin Nurse Donna Lawrence. *Id.*; *see also* AHR at 41. Following security clearance, plaintiff was seen on that date by Nurse Katherine Caban, for the purpose of seeking his input concerning any physical conditions experienced by him and to explain sick call procedures at the facility.  Smith Decl. (Dkt. No. 30) ¶ 5; AHR at 42.  In accordance with the routine practice at the facility, plaintiff's medical records were then referred to Dr. Champagne, who reviewed them on November 27, 2002. Smith Decl. (Dkt. No. 30) ¶ 6; Champagne Decl. (Dkt. No. 30) ¶ 5; AHR at 40.

There is no evidence in the record to even remotely suggest that defendant Smith was in any way herself deliberately indifferent to plaintiff's medical condition.  Instead, plaintiff's claim against her appears to be bottomed upon her supervisory position as Nurse Administrator and his assertion that pursuant to DOCS policy, in that position she had

18

oversight responsibility and should have discerned both his medical condition and the need for a bunk permit.  Since there is no *respondeat superior* liability under section 1983, see *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003), and instead liability for a constitutional deprivation must be based upon personal involvement of the defendant in the allegedly offending conduct, this is an insufficient basis to establish defendant Smith's culpability in connection with the Eighth Amendment violation alleged by plaintiff.  *Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309, at n. 33 (N.D.N.Y. May 1, 2006) (Scullin, S.J. & Lowe, M.J.) (collecting cases).

Plaintiff's claims against defendant Champagne appear to arise principally out of his frustration over the inability of medical staff at Franklin to cure his degenerative disc disease and relieve him from the pain associated with that condition.[7]  Many of the allegations set forth in plaintiff's complaint are couched in terms of "negligence" and "malpractice".  It is well established, however, that neither a claim of malpractice by an inmate against a prison physician nor disagreement

---

[7]     It does not appear that Dr. Champagne saw the plaintiff for purposes of rendering care and treatment for his back condition until December 19, 2002, after the fall from his top bunk.  Champagne Decl. (Dkt. No. 30) ¶ 17.

with a prescribed course of treatment gives rise to a constitutional claim cognizable under section 1983.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross*, 784 F. Supp. at 44.  In this instance a careful review of the record, including plaintiff's AHR, fails to reflect any indifference by Dr. Champagne to Moolenaar's symptoms. Instead, the record reveals that plaintiff was provided with medication to relieve his back pain, and that the degenerative disc disease from which he has been diagnosed as suffering is a common, chronic ailment which afflicts many individuals and is subject to the type of treatment, including exercise regimes, pain medication, and physical therapy, which plaintiff was provided while at Franklin.[8]

One of plaintiff's complaints concerns a delay in renewing his pain medication prescriptions upon his arrival at Franklin.  From his records, it appears that Moolenaar was not provided with pain medication between November 27, 2002, when, according to his records, he complained of back pain for the first time while at Franklin, and December 19, 2002 when

---

[8]     Degenerative disc disease is described by Dr. Champagne as a relatively common condition experienced by many adults as a normal part of the aging process, and capable of producing symptoms of varying degrees.  Champagne Decl. (Dkt. No. 30) ¶ 10.  According to Dr. Champagne "[m]ost persons can expect to have some level of degeneration as they age."  *Id.*

he was prescribed Flexeril and Ibuprofin.  *See* AHR at 38-39.  Such a

modest delay in providing pain medication, however, does not rise to a

level of constitutional significance.[9]  *Brown v. Wright*, No. 04 Civ. 0462,

2005 WL 3305015, at *6-*7 (S.D.N.Y. Dec. 6, 2005) (collecting cases).

One of plaintiff's allegations against Dr. Champagne is that his

failure to provide Moolenaar with a lower bunk permit between his arrival

at Franklin on November 25, 2002 and the date of his accident on

December 18, 2002 constitutes deliberate indifference to his medical

needs.  The record reflects, however, that despite being advised that he

could request a lower bunk permit, plaintiff did not do so.  *See* Moolenaar

Dep. (Dkt. No. 30) at 31-37, 46.  At no time prior to December 18, 2002

was Dr. Champagne asked by the plaintiff to provide him with a such a

permit, nor is there any indication in the record that Dr. Champagne was

aware of any such request or preference.  *Id.*  Since the record is devoid

of any evidence from which a reasonable factfinder would conclude Dr.

Champagne knew or reasonably should have known that plaintiff's

medical condition warranted the issuance of such a lower bunk permit,

---

[9]     Plaintiff's AHR fails to reflect any complaints to prison officials of back
pain between November 27, 2002 and the December 18, 2002 bunk accident.  AHR at
39-42.

and plaintiff's other allegations against Dr. Champagne amount to nothing more than a disagreement with the course of treatment and frustration over experiencing ongoing back pain, I recommend dismissal of plaintiff's medical indifference claims against that defendant as a matter of law.

    C.    Retaliation Claim

Generously construed, plaintiff's complaint could be viewed as alleging retaliation on the part of the defendants for his having engaged in protected activity, including the filing of a grievance and commencement of suit against Dr. Champagne.[10]  Defendants maintain that any such retaliation claim is lacking in merit.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.

---

[10]    It is well established, and defendants do not argue otherwise, that such conduct by a prison inmate is protected activity subject to protection under the First Amendment. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287,

97 S.Ct. 568, 576 (1977); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.

2001).  If the plaintiff carries this burden, the defendants must show by a

preponderance of the evidence that they would have taken action against

the plaintiff "even in the absence of the protected conduct."  *Mount*

*Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  If taken for both proper and

improper reasons, then, state action may be upheld if the action would

have been taken based on the proper reasons alone.  *Graham*, 89 F.3d at

79 (citations omitted).

Much of the retaliatory conduct complained of in plaintiff's complaint

involves actions taken by DOCS employees other than the two defendants

named in this action.  The record, including plaintiff's complaint and his

response in opposition to the motion papers, is wholly devoid of any

evidence which would link the defendants to that activity or inculpate them

in orchestrating or arranging for it.  Under these circumstances, personal

involvement in a retaliation claim being a requirement of such a cause of

action, *see*, *e.g.*, *Salahuddin v. Mead*, No. 95 Civ. 8581, 2002 WL

1968329, at n.3 (S.D.N.Y. Aug. 26, 2002), I recommend rejection of those

portions of plaintiff's retaliation claim based upon conduct, including

issuance of a misbehavior report, taken by other prison officials.

A portion of plaintiff's retaliation claim against Dr. Champagne appears to be based upon his admitted refusal in November 25, 2003 to treat Moolenaar on a non-emergency basis in light of plaintiff's prior suit against him complaining of the adequacy of his care and seeking ten million dollars in damages.[11]  *See* Complaint (Dkt. No. 1) at 12; *see also* Champagne Decl. (Dkt. No. 30) ¶ 25.  To establish a claim of retaliation, however, as was previously noted, plaintiff must establish that he or she suffered an adverse action taken out of retaliatory animus.  *See* *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).  In this case, plaintiff did not suffer any significant adverse action consequences. While, given plaintiff's dissatisfaction with his services, Dr. Champagne did understandably decline to provide non-emergency care and treatment for the plaintiff, he nonetheless indicated a willingness to respond to any emergencies, and additionally pointed out to the plaintiff that there were

---

[11]     Plaintiff's complaint alleges that on June 24, 2003 he was seen by Dr. Kim who advised him that there was nothing wrong with his back and he was discharged to return to work.  Complaint (Dkt. No. 1) at 9-10.  Those allegations do not draw support from plaintiff's AHR, which reflects that on June 23, 2003 he was seen at the facility reporting sharp back pains and was provided with Flexeril and Ibuprofen. AHR at 32.  The following day, on June 24, 2003, plaintiff was again seen by a professional at the medical facility and was provided with additional dosages of Flexeril and Ibuprofen.  AHR at 31.

three other physicians available to attend to his non-emergency medical needs.  Under these circumstances plaintiff did not suffer any adverse action as a result of Dr. Champagne's decision not to treat him and thus, as a matter of law, cannot sustain a retaliation claim based upon that refusal.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff, who like many aging individuals suffers from degenerative disc disease, has commenced this action expressing understandable frustration at the inability of prison officials to cure his diagnosed condition.  Plaintiff's complaint, however, is replete with references to negligence and medical malpractice, and primarily evidences his disagreement with the prescribed treatment received from prison officials. The record now before the court fails to reflect any evidence of deliberate indifference by defendants Champagne and Smith to plaintiff's serious medical needs, instead revealing that his back condition was properly diagnosed and addressed through the administering of pain medication, prescribed exercises, and receipt of physical therapy.  I therefore recommend dismissal of plaintiff's deliberate indifference claims.

Plaintiff's complaint also asserts a cause of action for retaliation.

The actions allegedly taken against him which form the basis of that retaliation claim principally relate to conduct of corrections officials who are not defendants in this action.  Inasmuch as the record is lacking in evidence implicating the named defendants in connection with those actions, this portion of the retaliation claim is subject to dismissal.  Lastly, while plaintiff also asserts that Dr. Champagne's refusal to treat him in light of his having engaged in the protected activity of suing him was unlawful, that conduct did not adversely affect the plaintiff since three other prison doctors at Franklin were available to address plaintiff's non-emergency care, and Dr. Champagne indicated that he would not refuse to provide emergency services to the plaintiff.

Based upon the foregoing is it hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 30) be GRANTED, and plaintiff's complaint DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

Dated:    August 28, 2006
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\Eighth Amendment\conditions of confinement\medicalindifference\moolenaar.wpd\

27